**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**LANTANA INSURANCE, LTD.,**
**a surplus lines insurer,**

        **Plaintiff,**

**v.**                                  **Case No. 3:08cv64/MCR/EMT**

**PATRICIA JO RITCHIE d/b/a**
**RITCHIE LARGE FAMILY CHILD**
**CARE HOME, JOHN DOE NO. 1,**
**JOHN DOE NO. 2, JANE DOE NO. 1,**
**JANE DOE NO. 2, JANE DOE NO. 3,**
**Minors, GARY R. WRIGHT,**
**KOURTNEY WRIGHT, SHASTA**
**PHILLIPS, and CHRISTINA TANKSLEY,**

        **Defendants**.
_____/

## O R D E R

    Plaintiff Lantana Insurance Ltd. ("Lantana") brought suit seeking a declaration limiting its liability on an insurance policy to $50,000. The insured, Patricia Jo Ritchie d/b/a Ritchie Large Family Child Care Home ("Ritchie"), asserts that coverage should be as high as $250,000. Before the court are cross motions for summary judgment filed by Lantana (doc. 61) and Ritchie (doc. 67), to which each has responded. The court has also considered the responsive memoranda filed by the Jane and John Doe defendants, Gary and Kourtney Wright, Shasta Phillips, and Christina Tanksley (docs. 65, 66, 70, 71). The court heard oral argument from all parties on September 9, 2010. After carefully reviewing the parties' motions, supporting documents, and arguments, the court denies Lantana's motion for summary judgment and grants final summary judgment in favor of the defendants.

**Background**

The parties agree that there are no disputed issues of material fact.  Lantana issued three annual Family Child Care Provider's General Liability Policies to Patricia Ritchie for the large family child care home that she operated with her husband, Jan Ritchie.[1] Defendants John Does No. 1 and 2, and Jane Does No. 1, 2, and 3, who are minors, and their parents or legal guardians allege the children were abused by Jan Ritchie while attending child care in the Ritchie's home.  The alleged molestations occurred over three policy periods between April 2006 and September 2007.  One child was abused during the first policy period, in effect from June 3, 2005 to June 3, 2006; two or more children may have been abused during the second policy period, in effect from June 3, 2006 to June 3, 2007; and two or more children may have been abused during the third policy period, in effect from June 3, 2007 to June 3, 2008.  Each child may have been abused multiple times by Ritchie.  Jan Ritchie took his own life on September 27, 2007, before the Okaloosa County Sheriff's Department could complete an investigation.

The general liability coverage of each policy pays for bodily injury resulting from an "occurrence" arising out of the insured's child care activities, but it explicitly excludes coverage for abuse-related claims.[2]  However, Ritchie purchased a special "Abuse Endorsement" that provides coverage for claims resulting from "an incident of abuse"

---

[1] Lantana actually issued four insurance policies to Ritchie, but only the three policies issued between June 2005 and June 2008 are relevant to this suit.  The policy numbers for the three relevant polices are FGL-30021073-01 (in effect from June 2005 through June 2006); FGL-30021073-02 (in effect from June 2006 through June 2007); and FGL-30021073-03 (in effect from June 2007 through June 2008).  The terms of these policies are identical aside from their effective dates.

[2] The general liability policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Doc. 61-4, at 8.)  The general policy defines "abuse" broadly to include "any and all forms of committed or alleged, actual or threatened abuse, including but not limited to physical abuse; sexual abuse, including sexual molestation, sexual exploitation, sexual injury or any sexual or intimate relationship or undue familiarity; licentious, immoral or sexual behavior, whether or not intended to lead to, or culminating in, any sexual act, even if consensual; mental abuse; inappropriate touching; erotic physical contact; or the use of pornographic material for a purpose other than that of treating a documented dysfunctional sexual condition."  (Doc. 61-4, at 7.) Exclusion S of the general liability policy explicitly excludes coverage for bodily injury "arising out of either actual or threatened abuse."  (Doc. 61-4, at 6.)

arising out of the child care. (Doc. 61-4, at 12.) The Declarations page of each policy sets forth the following limits of insurance coverage: $50,000 as the "child sexual abuse injury incident limit" for any one incident; and $100,000 as the "child sexual abuse injury aggregate limit." (Doc. 61-4, at 3.) The Abuse Endorsement provides as follows:

> We will pay on behalf of the insured all sums up to the applicable Limits of Liability set forth on the Declarations that the insured shall be legally obligated to pay for bodily injury resulting from an incident of abuse arising out of the [sic] your activities as a child care provider, provided:
>
> 1. The abuse takes place during the Policy Period specified in the Declarations; and
>
> 2. The abuse, if known, is immediately reported to us or our designated representatives; and
>
> 3. Multiple incidents of abuse caused by one perpetrator, or by two or more perpetrators acting together or in any combination, shall be deemed to be a single incident of abuse and shall be deemed to have taken place on the date of the first of such acts.

(Doc. 61-4, at 12.)[3] The Abuse Endorsement further states that for purposes of this endorsement only:

> A. Definition of Bodily Injury
> Bodily injury means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. Bodily injury includes mental anguish or emotional distress if such mental anguish or emotional distress results directly from abuse or from the claimant actually witnessing the abuse, regardless of whether there is physical contact between the claimant and the perpetrator(s).
>
> B. Limits of Liability
> The Policy Aggregate Limit of Liability stated in the Declarations is the most we will pay in any one policy period, and the sexual abuse sub-limits provided are included in the Limits of Liability stated in the Declarations and are not in addition to those limits indicated.

---

[3] In all direct quotations from the insurance policy, the court has omitted bolded font that appears in the policy.

The Child Abuse Injury Incident Limit Stated in the Declarations is the most we will pay for a single act, or multiple, continuous, sporadic, or related acts of abuse, regardless of the number of:

1.  Insureds;
2.  Claims made;
3.  Suits brought; or
4.  Persons or organizations making or bringing claims, suits, or other causes of action or proceedings.

(Doc. 61-4, at 12.)  The endorsement expressly excludes from coverage "any bodily injury resulting from an incident of abuse, if the first act of abuse occurred prior to the beginning of the policy period."  (Doc. 61-4, at 13.)

Lantana argues that the policy language clearly and unambiguously limits coverage to $50,000 in this case.  Defendants assert that the policy language is ambiguous and must therefore be construed in their favor, resulting in $250,000 of available coverage; that is, $50,000 for the first policy year when only one child was abused, and $100,000 (the aggregate limit) for each of the remaining two policy years when multiple children were abused.

**Discussion**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Summary judgment is appropriate in a declaratory judgment action seeking a declaration of insurance coverage because the construction and effect of an insurance policy is a matter of law.  *See TIG Ins. Co. v. Smart Sch.*, 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005).  There is no dispute that Florida law applies.

According to the Supreme Court of Florida, when interpreting an insurance contract, the court applies generally accepted rules of construction, meaning that "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage."  *Penzer v. Transportation Ins. Co.*, 29 So.

3d 1000, 1005 (Fla. 2010).  The policy language is interpreted "in light of the skill and experience of ordinary people, and given its everyday meaning." *State Farm Fla. Ins. Co. v. Campbell*, 998 So. 2d 1151, 1153 (Fla. 5th DCA 2008) (internal marks omitted).  "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous," and it should be construed liberally in favor of coverage to the insured and strictly against the insurer.  *Penzer*, 29 So. 3d at 1005.  However, a provision is not necessarily ambiguous simply because it is undefined, complex, or requires analysis; a clear and unambiguous provision should be enforced according to its terms.  *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165-66 (Fla. 2003).  Finally, although courts should not construe insurance policy provisions in isolation but in light of the policy as a whole, giving every provision its full meaning and operative effect, *see* Fla. Stat. § 627.419(1), when a policy attaches an endorsement that is inconsistent with the general policy, the endorsement generally controls, *see Steuart Petroleum Co. v. Certain Underwriters At Lloyd's London*, 696 So. 2d 376, 379 (Fla. 1st DCA 1997).

First, it is clear and undisputed that the language of the Abuse Endorsement and the Declarations page provide coverage for this dispute.  Although the general liability policy explicitly excludes coverage for bodily injury arising out of actual or threatened abuse,  the Abuse Endorsement modifies the general policy to explicitly provide coverage for "bodily injury resulting from an incident of abuse arising out of" the activities of Ritchie's day care center.  At issue is the extent of coverage available under each policy where multiple victims were sexually abused by one perpetrator.

Lantana asserts that because there is a single perpetrator, all acts of abuse against all victims spanning all policy periods amount to one cumulative "incident of abuse" because the policy provides that "multiple incidents of abuse caused by one perpetrator . . . shall be deemed to be a single incident of abuse." (Doc. 61-4, at 12.)  Under this view, the $50,000 incident limit is triggered only once by the first act of abuse, and thus all victims of one perpetrator are limited to sharing in that amount, regardless of the policy

period in which they were abused. Defendants assert this language is ambiguous because the phrase "incident of abuse" is not otherwise defined in the policy, and the Abuse Endorsement nowhere addresses whether an incident of abuse includes more than one victim. Defendants assert that although it is reasonable to conclude that an incident of abuse of one child triggers the Child Sexual Abuse Incident Limit of $50,000, even if that child is abused multiple times thereafter by the same perpetrator, nothing in the policy indicates that all victims of one perpetrator must be combined as a single incident.

The court agrees that there is ambiguity in the policy's failure to define the phrase "incident of abuse." Although the lack of a specific definition by itself does not necessarily render the phrase ambiguous, *see State Farm Fire & Casualty Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998), where a term is left undefined in a policy, courts may rely upon widely circulated references to determine the accepted meaning of the word. *See Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291-92 (Fla. 2007); *see also Continental Cas. Co. v. Wendt*, 205 F.3d 1285, 1262-63 (11th Cir. 2000). The general dictionary definition of "incident" includes a "situation that is a separate unit of experience." *Merriam-Webster's Collegiate Dictionary* 629 (11th. ed. 2003). Black's Law Dictionary defines it as "[a] discrete . . . happening."[4] *Black's Law Dict.* 830 (9th ed. 2009). This plain language meaning could broadly indicate that each act of abuse against each child is a separate incident, i.e., a separate unit of experience or happening. In an apparent attempt to avoid this broad, plain language meaning of the term and narrow the scope of coverage provided, the Abuse Endorsement added that "multiple incidents of abuse" caused by one perpetrator will be deemed "a single incident of abuse." Ambiguity, however, arises from the fact that it is impossible to discern from this language whether the policy intends to include multiple victims of one perpetrator as a single incident. A natural, plain language reading leads easily to a conclusion that this language deems multiple acts of sexual abuse against a child by one perpetrator to be a single incident, but it is unclear whether "incident" also

---

[4] Both definitions also include the word "occurrence." To avoid confusion, however, the court chooses not to emphasize that word in this discussion because the word "occurrence" is a specially defined term of art within the insurance policies at issue, and "occurrence" does not appear within the endorsement.

includes multiple child victims. The language of the Abuse Endorsement is reasonably susceptible to both interpretations and does not clearly articulate which meaning is intended. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (noting a policy is considered ambiguous if the language is susceptible to more than one reasonable interpretation, and that ambiguous provisions are interpreted liberally in favor of the insured).

Additionally, Lantana's assertion that the policy clearly covers as one incident all injuries sustained by all victims of one perpetrator, regardless of the circumstances, is contrary to ordinary understanding.[5] Ascribing to the phrase "multiple incidents of abuse" a broad meaning that includes multiple victims, as Lantana does, actually has the effect of limiting the scope of the endorsement's coverage. This interpretation would be contrary to the contract endorsement's purpose, which is to *provide* coverage for abuse. Under Florida law, when an insurance company intends to preclude or limit coverage, it is incumbent on the insurance company to "include clear language to accomplish this result." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 884 (Fla. 2007). This Lantana has not done. Lantana relies on the case of *TIG Ins. Co. v. Smart Sch.*, 401 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 2005), in which the court found that the phrase "sexual abuse occurrence" in a policy unambiguously meant that abuse of multiple victims by a single perpetrator would be treated as a single occurrence. However, the policy in that case included specific, defining language that is absent here. In *TIG*, the court noted that the policy's definition of "sexual abuse occurrence" plainly encompassed multiple acts of one perpetrator, both related and unrelated, and importantly, as noted by the court in its order, the second paragraph of the definition provided that *"all* acts of sexual abuse occurrence

---

[5] Even if one can imagine situations where related acts of physical and emotional sexual abuse by one perpetrator against more than one child could be reasonably considered one "incident of abuse," depending on the circumstances and temporal proximity of the acts, it nevertheless strains common understanding to lump together an act of abuse against one child in 2005 and an unrelated act of abuse by the same perpetrator against a different child in 2007 as the same "incident of abuse" without some language in the policy plainly defining the phrase in that manner or otherwise reflecting the parties' intent to define it in such a strained manner.

by a single perpetrator" were "to be deemed a single occurrence *regardless of the number of persons involved or the number of incidents or locations involved, or the period of time during which the acts of sexual abuse or molestation took place*." 401 F. Supp. 2d at 1343 (internal marks omitted) (emphasis in original). The *TIG* court concluded that this language was "straightforward, comprehensive, and susceptible of only one reasonable interpretation," that is, that all of the perpetrator's sexual misconduct while an employee at the school, regardless of the individual circumstances, would be considered a single occurrence. *Id.* at 1343. Such clarifying language is not present in this case.[6]

Furthermore, the ambiguity here is not resolved by considering the endorsement and policy as a whole. The endorsement states that Lantana will pay for "bodily injury" resulting from "an incident of abuse." The term "bodily injury" is then defined as injury sustained "by a person," in the singular. According to the Defendants, this indicates that coverage is triggered for each child abused. Ordinarily, in interpreting contracts, a term in the singular includes the plural, unless a contrary construction is "necessary to give effect to the intention of the contracting parties." 2 Couch on Insurance 3d § 22:5 (Revised ed. 2010). Here, the intention of the parties is uncertain because the policy language does not clearly address the victims. But even if the plural may be properly read into the language defining bodily injury to indicate that the company will pay for bodily injury sustained by "persons," this definition of the injury does not clarify that multiple victims will be included in a single incident. The language still includes the reasonable possibility that multiple incidents of abuse toward multiple *victims* produce more than one incident of abuse. Also, the court looks to the plain language of the Declarations page, which the court must consider when construing the contract. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (instructing courts not to focus on one provision but to read clauses

---

[6] In this case, as noted above, the policy's definition of the term "occurrence" does not apply. The term does not appear in the Abuse Endorsement. Furthermore, the general policy defines "occurrence" as an accident, and, unquestionably, sexual abuse is not an accident. *See Landis v. Allstate Ins. Co.*, 546 So. 2d 1051, 1053 (Fla. 1989) ("To state that a child molester intends anything but harm and long-term emotional anguish to the child defies logic."). For these reasons, the court concludes that the cases cited by the parties discussing and interpreting the term "occurrence" are inapposite.

in conjunction with the entire policy, including the policy declarations). The Declarations page indicates that the event of "Child Sexual Abuse Injury" triggers the $50,000 incident limit; this language suggests that each child's injury is viewed as the triggering event for the incident rather than each perpetrator's cumulative acts.

Lantana asserts that the Limits of Liability section of the endorsement clarifies that multiple victims may be included as one incident because it states:

> The Child Abuse Injury Incident Limit stated in the Declarations is the most we will pay for a single act, or multiple, continuous, sporadic, or related acts of abuse, regardless of the number of:
>
> 1. Insureds;
> 2. Claims made;
> 3. Suits brought; or
> 4. *Persons* or organizations making or bringing claims, suits, or other causes of action or proceedings.

(Doc. 61-4, at 12 (emphasis added).) According to Lantana, Number 4 indicates that the $50,000 incident limit is the most the company will pay for acts of abuse regardless of the number of persons involved, i.e., victims. The court disagrees and finds that this language limits the per-incident coverage available for all claims, suits and derivative actions that may be brought based on acts of abuse amounting to a single incident; but it does not speak to child victims. "Persons" making or bringing claims or suits in Number 4 cannot be read so broadly as to include child victims because a child lacks the capacity to bring suit on his or her own; someone else would always have to bring a claim or suit on behalf of the child. The language of the endorsement's Limits of Liability section is therefore silent regarding whether more than one child can be considered within a single incident of abuse.[7]

---

[7] Additionally, several inconsistencies appear in the terminology used. The Limits of Liability section refers to the incident limit as the "Child Abuse Injury Limit," whereas the Declarations page, to which the Limits of Liability section refers, calls it the "Child *Sexual* Abuse Injury Incident Limit" (emphasis added). Also, the Limits of Liability section states that the incident limit is the most the company will pay for "a single act" of abuse (or multiple, sporadic or related acts), whereas the general coverage provision in the Abuse Endorsement speaks in terms of paying for injury resulting from "an incident of abuse," which is undefined. These discrepancies may be minor, but they certainly do not aid in clarifying the ambiguities that exist.

In sum, the ambiguities within the policy cannot be completely reconciled, and it is therefore appropriate to construe the policy in favor of the insured. *Auto-Owners Ins*, 756 at 34. The court finds that the Defendants' interpretation is reasonable – a new incident of abuse against a new child in a new policy period begins an "incident of abuse," regardless of how many times the perpetrator abused that child. Thus, the court will construe the policy as providing that each child's sexual abuse injury triggers a new incident with the first act suffered, and coverage is available to the child in the amount of $50,000 for all injuries arising out of that incident of abuse, subject to the aggregate limit of $100,000 in the event more than one child began to suffer abuse during the same policy period.

The court rejects the argument advanced by Jane Doe 3 and Tanksley that the policy limit resets and begins anew for each child with each new policy period. The endorsement clearly states that each incident is deemed to have taken place when the first of the acts occurred for that incident. (Doc. 61-4, at 12.) The endorsement also expressly excludes from coverage "any bodily injury resulting from an incident of abuse, if the first act of abuse occurred prior to the beginning of the policy period." (Doc. 61-4, at 13.) Therefore, once an act of physical abuse occurs and triggers the incident limit as to that child, all subsequent acts of abuse against that child, even if they occurred in subsequent policy periods, remain subject to the incident and aggregate limits available under the policy period in which the first act occurred.

Thus, in this case, the claim of John Doe 1, the only child allegedly abused during the first policy period at issue, is subject to the $50,000 sexual abuse injury incident limit for that policy, even if he suffered continuing acts of abuse during that policy period or subsequent policy periods. Jane Does 1, 2, and 3, and John Doe 2 were enrolled during the next policy period. Because it is alleged that two or more of them began to suffer physical sexual abuse during that policy period, they are subject to the $100,000 aggregate child sexual abuse limit of that policy and must share in that amount. If their abuse continued into the next policy period, no more is available to them by virtue of the new

policy period. The last policy at issue provides coverage only if one or more of the children (all of whom were enrolled during the prior policy period as well) were first abused during the final policy period. A child first abused during the final period would be subject to either the $50,000 incident limit (if only one) or the $100,000 aggregate limit (if more than one child first began to be abused during that policy period). Lantana's total potential exposure for all claims during these three policy periods, therefore, is $250,000. Also, because the insurance policies apply to the claims made, Lantana has a duty to defend to the extent of these limits of liability.

Accordingly, it is hereby ORDERED that Lantana's Motion for Summary Judgment (doc. 61) is DENIED, and Ritchie's Motion for Summary Judgment (doc. 67) is GRANTED. From the arguments made in the responses filed by the other defendants and the representations made at oral argument, the court construes their responses as joining in Ritchie's motion. Therefore, summary final judgment is to be entered in favor of all defendants.

**DONE AND ORDERED** this 17th day of September, 2010.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**